CLARE COUNTY SAVINGS BANK *v.* GOODMAN.

MORTGAGES—COLLATERAL SECURITY—ENFORCEMENT.
    One who gives a mortgage in terms securing the payment
    of the notes of a third person cannot require the mortgagee
    to resort to the notes before proceeding upon the mortgage.

Appeal from Clare; Wisner, J., presiding. Submitted
January 24, 1899. Decided February 6, 1899.

Bill by the Clare County Savings Bank against William
H. Goodman and wife to foreclose a mortgage. From a
decree for complainant, defendants appeal. Affirmed.

*C. W. Perry,* for complainant.

*Spaulding & Norton (John C. Dooling,* of counsel),
for defendants.

HOOKER, J. The defendant William H. Goodman and
his son, W. A. Goodman, were copartners in trade, and
had dealings with the complainant, and with Patterson &
Co. Patterson & Co. gave a note to the Goodmans, in
payment of an account due them, for $173. It was made
payable to W. A. Goodman, the son, who indorsed it, and
discounted it with the complainant. Goodman & Co.
received credit. Patterson & Co. gave two other notes,
of $500 each, payable to Tonkin, Harris & Co. These
were indorsed by Tonkin, Harris & Co., and by W. A.
Goodman. It is claimed by W. A. Goodman that these
last-mentioned notes were signed by him for the accom-
modation of Patterson & Co.; but counsel for complain-
ant asserts that they were turned over to some men named
Morley, upon an indebtedness due the Morleys from the
Goodmans. The Morleys negotiated the paper in Sagi-
naw, and the money to pay them when due was obtained

from the complainant by the Goodmans, and all of the notes were renewed from time to time afterwards, at complainant's bank, and the indebtedness of the Goodmans to the Morleys was paid through these notes.   This claim of the complainant seems to have been the understanding of the senior Goodman, and we have no doubt that it is correct. Subsequently, the bank became dissatisfied with the paper, and asked the Goodmans to secure it.   The younger Goodman accordingly deposited with the bank, as collateral, some paper belonging to his firm, and some bank stock which he claims to have owned at the time, but which his father testified was owned by the firm.   The bank collected some of the paper left by Goodman, and the stock was sold, and the proceeds were held as collateral, and they lacked about $200 of equaling the amount of the Patterson notes.   The elder Goodman called upon complainant, and arranged to take the proceeds of the collateral, and gave the mortgage in suit therefor.   This suit is brought to foreclose the mortgage, and the defendants appeal from a decree in favor of the complainant:

It is claimed by the defendants that the indorsement of these notes by W. A. Goodman, and his subsequent delivery of the paper belonging to the firm as collateral, were unauthorized, and that the bank acquired no right to hold them, against this defendant W. H. Goodman, and counsel assert that the mortgage in question was obtained "by a species of duress."   The mortgage contains the following provision:

"Provided always, and these presents are upon this express condition, that if the said parties of the first part shall and do well and truly pay, or cause to be paid, to the said party of the second part, the sum of eleven hundred and seventy-three dollars on or before two years from date, with interest at eight per cent. per annum, payable annually, on all sums unpaid, at the Clare County Savings Bank, in Clare, Michigan (this mortgage is given as collateral security for the payment of three notes given by F. D. Patterson & Co., two of which are for five hundred

dollars each, and dated August 18, 1893, and indorsed by W. A. Goodman and Tonkin, Harris & Co., and the other for one hundred and seventy-three dollars, dated August 22, 1893, and indorsed by W. A. Goodman, and all held by said second party, bearing date and executed as above set forth, and when same are paid), then these presents and said notes shall cease and be null and void.

"And it is hereby expressly agreed by and between said parties that should any default be made in the payment of said interest, or any part thereof (or of any installment of principal, or of any part thereof), on any day whereon the same is made payable, as above expressed, and should the same remain unpaid and in arrears for the space of 30 days, then and from thenceforth—that is to say, after the lapse of the said 30 days —so much of the aforesaid principal sum of eleven hundred and seventy-three dollars as remains unpaid, with all arrearages of interest thereon, shall, at the option of said party of the second part, its successors, executors, administrators, or assigns, become and be due and payable immediately thereafter, although the period above limited for the payment thereof may not then have expired, anything hereinbefore or in said notes contained to the contrary thereof in any wise notwithstanding."

Counsel claim that the portion of this provision in the first paragraph, commencing with the words "this mortgage," was inserted by the request of the mortgagor; that he refused to execute the mortgage without it; and that it was the express understanding that the complainant was to attempt to collect the notes from the makers and indorsers before resorting to the mortgage. We think there is no merit in either contention, as, in our opinion, the preponderance of proof is with the complainant upon both questions. The mortgage, by its terms, secures the payment of the notes; and, if defendant desires the doubtful experiment of an attempt to collect them to be made, he can make it himself, upon payment of the mortgage. The bank is entitled to hold both notes and mortgage until its claim is paid, as in other cases.

The decree is affirmed, with costs.

The other Justices concurred.